CHARLES N. THOMPSON ET AL., APPELLEES, V. JOHN WALL,
APPELLANT.

FILED MAY 26, 1924.    No. 22774.

1. **Bills and Notes:** PLEA OF NIL DEBET. "The plea *nil debet* under
   our system puts in issue no fact and cannot be regarded as a de-
   fense." *Baldwin v. Burt*, 43 Neb. 245.
2. **Trial:** RIGHT TO OPEN AND CLOSE. "Where a d 'endant in his
   answer admits the plaintiff's cause of action, but sets up new
   matter as a defense, which defense would fail without proof
   thereof, the defendant is entitled to open and close the case."
   *Farmers State Bank v. Cavanaugh*, *ante*, p. 142.
3. ———: ———: HARMLESS ERROR. Under the facts dis-
   closed by the record, the denial to the defendant of the right to
   open and close the case, although erroneous, *held* not to be prej-
   udicial.
4. **Evidence** examined, and *held* sufficient to support the verdict and
   judgment of the trial court.

APPEAL from the district court for Valley county: ED-
WIN P. CLEMENTS, JUDGE. *Affirmed.*

*Bert M. Hardenbrook* and *O. A. Abbott,* for appellant.

*Davis & Davis* and *Lanigan & Lanigan, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY and GOOD, JJ.,
BLACKLEDGE and REDICK, District Judges.

DAY, J.

The plaintiffs, who are the heirs at law of Asler C.
Thompson, deceased, brought this action against the de-
fendant, John Wall, to recover a balance alleged to
be due upon a promissory note executed by the defendant
to Asler C. Thompson. The trial resulted in a verdict and
judgment for the plaintiffs for $6,586. Defendant appeals.

It appears that on June 20, 1918, the defendant executed
and delivered to Thompson his promissory note for
$6,757.97, due two years after date, and bearing interest at
the rate of 6 per cent. from date, and 10 per cent, after
maturity; that thereafter Thompson died, and the plaintiffs
by virtue of their relationship became the owners and hold-

ers of the note. The plaintiffs alleged that, after deducting certain payments which were indorsed upon the note, there was due and owing thereon $7,304.53, for which they prayed judgment. The amended answer of the defendant admitted the execution and delivery of the note sued on, but denied "that there is now due and owing to the lawful owners and holders of said note the sum of $7,304.53, or any other sum whatever." The amended answer also pleaded matters of counterclaim and set-off, further reference to which will be made.

It is first urged by the defendant that the court erred in denying to him the right to open and close the case. At the very outset of the bill of exceptions, it appears that defendant's counsel asked the court for leave to open and close the case, stating: "The burden of proof is upon us to prove our defense." This application was denied.

At the time the amended answer and counterclaim was filed, it contained these words: "Denies that the plaintiffs are the lawful owners and holders of said note." Thereafter an amendment was made to the petition, and thereupon the clause in the answer above quoted was stricken out. The amendments to the petition, as well as the elimination of the clause in the answer, appear to have been made by consent of the parties. In this state of the pleadings, the answer was in the nature of a confession and avoidance. The allegation in the answer denying "that there is now due and owing to the lawful owners and holders of said note the sum of $7,304.53, or any other sum whatever," did not put in issue any fact. In *Baldwin v. Burt*, 43 Neb. 245, it was held: "The plea *nil debet* under our system puts in issue no fact and cannot be regarded as a defense." *Gray v. Elbling*, 35 Neb. 278.

The rule is well settled that, where the defendant in his answer admits the plaintiff's cause of action, but sets up new matter as a defense, which defense would fail without proof, the defendant is entitled to open and close the case. *Suiter v. Park Nat. Bank*, 35 Neb. 372; *Farmers State Bank v. Cavanaugh, ante,* p. 142. In the light of this rule, we

think the burden of proof was upon the defendant, and the right to open and close the case should have been accorded to him.

The real controversy in the case arises upon the counterclaim and set-off pleaded by the defendant. In substance it alleged that for some years prior to January, 1917, the defendant had been the president of the Commercial State Bank of Arcadia; that the bank had a capital stock of $10,000, divided into shares of $100 each; that the defendant owned 79 shares of the stock; that, although defendant was president of the bank, he was not engaged as the active manager thereof; that on January 9, 1917, Asler C. Thompson purchased of the defendant 70 shares of the stock in the bank, paying therefor $16,800 in cash; that as a part of the transaction defendant was to remain as president of the bank, and devote his entire time to the active management thereof under the direction of Thompson; that Thompson and one Sunderland were to be vice-presidents of the bank; that Thompson was to pay defendant the reasonable value of his services so long as they should mutually agree; that thereupon the defendant entered upon the duties as active manager of the affairs of the bank, and so continued to act until January 14, 1919, at which time, at the request of Thompson, he resigned as president, and ceased to perform services as active manager of the bank; that the services performed by him during the period were reasonably worth the sum of $250 a month, aggregating $6,000; that no part of the same had been paid, and that the amount due to him for such services should be credited upon any amount found due upon the note.

The answer further alleged in substance that on January 20, 1918, the state bank examiner required the bank to charge off certain notes held and owned by the bank, amounting in the aggregate, with interest, to $6,757.97; that, through an arrangement between Thompson and the defendant, Thompson paid into the bank in lieu of the notes charged off $6,757.97 in cash; that thereupon the

defendant executed to Thompson the note sued upon, and the notes so charged off, by agreement, became the property of the defendant; that these notes were then left with Thompson and the bank for collection, and when collected the proceeds thereof were to be credited on the note given by defendant; that the defendant had no knowledge of the amounts collected on said notes except the amounts set out in the petition; that the bank now holds them as the property of the Thompson estate, and refuses to surrender the same; that Thompson's representatives have collected and converted to their own use on said notes $1,339.39, in addition to the amounts credited on the defendant's note as shown by the petition. Defendant prays that the additional sum of $1,339.39 should be credited upon the note.

An amended reply was filed in which the plaintiffs deny that the defendant ever rendered any services to Asler C. Thompson, personally, in acting as president of the Commercial State Bank; deny that the services rendered by the defendant were of the reasonable value of $250 a month, or any other sum. Plaintiffs allege that the state bank examiner required the bank to charge off notes amounting to the sum of $21,725.83; that under an agreement between the parties the defendant agreed to take up certain of the notes, amounting with interest to the sum of $6,757.97, and that said Thompson advanced to the defendant, to enable him to take up said notes, said amount, and took his note therefor, which note forms the basis of this action; that the notes taken up by the defendant were delivered to him; that neither said Thompson nor the plaintiffs have ever had custody or control of said notes at any time; that all of the indorsements made upon the note were made at the specific instance and request of the defendant. Plaintiffs deny that any of the notes turned over to the defendant were collected by them, or by Thompson.

It appears from the plaintiffs' testimony that the defendant's note was turned over by Thompson to Sunderland, vice-president of the bank; that the collateral notes were in the possession of the bank; and that defendant as presi-

dent of the bank collected from several of the makers of said notes certain sums which were credited on his note by Sunderland.

With respect to the claim of the defendant that there had been collected upon the collateral notes $1,339.39, in addition to the credits indorsed on defendant's note, the evidence fails to establish this claim. No attempt was made to show there had been payments upon any of these notes which were not credited upon defendant's note. All of the collateral notes, except two, were produced upon the trial. One of these two notes was for $119.40, and the other for $681.25. The testimony showed that they had become lost, or at least could not be located at the time of the trial. The loss of the notes falls far short of proof that they had been collected, especially in view of the testimony on behalf of the plaintiffs that they had not been collected. If the notes were lost, suit could be maintained as an action on a lost instrument. There was a complete failure to establish this part of the defense, and it might well have been withdrawn from the jury. The defendant cannot complain that this was not done.

With respect to the defendant's claim for services rendered as president and manager of the bank under a contract with Thompson that he would pay for such services, it appears that this question was submitted to the jury under proper instructions. A comparison of the amount due upon the note at the time of the trial with the verdict shows that the jury allowed the defendant upon his claim something over $1,760. In the light of the testimony, it is clear that the jury found that Thompson had agreed to pay the defendant for services rendered as president and manager of the bank, and that the jury allowed him a part at least of the amount claimed. The mere fact that the jury failed to allow the full amount claimed by the defendant does not in our view warrant a reversal of the judgment, notwithstanding the erroneous ruling of the court in denying to the defendant the right to open and close the case, as it appears to be an error without prejudice.

It is next urged by the defendant that the court erred in sustaining the objections of the plaintiff to certain questions propounded to the defendant while on the witness-stand. The questions related to a conversation between the defendant and Thompson, and apparently were for the purpose of establishing that Thompson had agreed to pay the defendant for his services as president and manager of the bank. It is not claimed in the answer that Thompson had agreed to pay any specific amount for the services. The objections to the questions were based upon the theory that the defendant was an incompetent witness, under the provisions of section 8836, Comp. St. 1922. We need not pass upon the question thus raised: First, because the jury found for the defendant on the issue of the employment of the defendant by Thompson, and hence no prejudice resulted to defendant; and, second, because no offer was made showing what fact the defendant sought to establish by the witness.

Defendant also claims that the court erred in giving certain instructions. We have examined the instructions, and in our view they fairly submitted to the jury the issues presented by the pleadings.

We find no prejudicial error in the trial, and the judgment is, therefore,

AFFIRMED.

Note—See Bills and Notes, 8 C. J. p. 910, sec. 1195—Trial, 38 Cyc. pp. 1304, 1310.